IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**EMILY EVANS,**                                    Case No. 3:15 CV 389

    Plaintiff,

    v.                                           Magistrate Judge James R. Knepp, II

**LUCAS METROPOLITAN HOUSING
AUTHORITY, et al.,**

    Defendants.                                  MEMORANDUM OPINION AND ORDER

### INTRODUCTION

On March 2, 2015, *pro se* Plaintiff Emily Evans ("Plaintiff") filed a complaint against Defendants Lucas Metropolitan Housing Authority ("LMHA") and Carrie Morgan ("Morgan"). (Doc. 1).[1] The Complaint and Amended Complaint (Doc. 29) assert Fourth Amendment violations under 28 U.S.C. § 1983. Because Plaintiff's complaint raises federal questions, the Court has jurisdiction under 28 U.S.C. § 1331. The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 21). The case is before the Court on Defendants' Motion for Summary Judgment (Doc. 32), to which Plaintiff responded (Doc. 36), Defendants replied (Doc. 37), and Plaintiff filed a sur-reply (Doc. 38). For the reasons stated below, Defendants' motion is granted and the case is dismissed with prejudice.

---

1. After a case management conference, Plaintiff filed an amended complaint (Doc. 29) and Defendants filed an answer thereto (Doc. 30). The Court stated it would consider Plaintiff's amended complaint an amendment by interlineation to the original complaint. (Doc. 31).

**BACKGROUND**

Plaintiff became a resident of Ravine Park Village ("Ravine") public housing in Toledo, Ohio in June 2013. LHMA owns and operates Ravine, and Morgan was the property manager of Ravine during the relevant time period. As a public housing provider, LMHA is subject to federal regulations governing standards for all Department of Housing and Urban Development ("HUD") housing. Those standards include the requirement to provide housing that is "decent, safe, sanitary and in good repair." 24 C.F.R. § 5.703 (physical condition standards); *see also* Doc. 32-1, at 1. HUD regulations also require annual inspections. 24 C.F.R. 5.705 (uniform physical inspection requirements); *see also* Doc. 32-1, at 2.

On June 17, 2013, Plaintiff (and Morgan, as LMHA representative) signed a lease agreement. (Doc. 32-1). Plaintiff also signed a document entitled "House Rules". (Doc. 32-2). The lease agreement included a provision incorporating the House Rules. (Doc. 32-1, at 5). The lease agreement signed by Plaintiff provided, *inter alia*,

> **Section 9. OCCUPANCY OF THE PREMISES AND TENANT'S OBLIGATIONS**
>
> \*\*\*
>
> c) In consideration of these rights, Tenant must:
>
> \*\*\*
>
> 6) Abide by necessary and reasonable regulations established by LMHA for the benefit and well being of the housing development and the tenants. These regulations are posted in the Management Office and incorporated by reference in this Lease.
>
> 7) Comply with all obligations imposed upon tenants by provisions of building and housing codes materially affecting health and safety.
>
> \*\*\*

**Section 13. ENTRY OF PREMISES DURING TENANCY**

a) Tenant agrees that any person authorized by LMHA will be permitted to enter the premises during working hours (8:00 a.m. – 5:00 p.m.) for the purpose of performing routine inspections and maintenance, making improvements or repairs, or showing the unit for re-leasing. Tenant has the right to see proper identification of employment with LMHA before allowing entry into the premises. If Tenant is absent from the dwelling unit when LMHA arrives to perform maintenance requested by Tenant, the request for maintenance constitutes Tenant's authority to enter the unit.

b) LMHA will give Tenant at least 48 hours advance, written notice of the purpose for the entry. LMHA may enter the dwelling unit at any time without advance notice when there is reasonable cause to believe that an emergency exists. If Tenant and all adult members of the household are absent at the time of entry, LMHA will leave a written statement specifying the date, time and purpose of entry in a conspicuous place before leaving the unit.

\*\*\*

**Section 17. DEFECTS HAZARDOUS TO LIFE, HEALTH OR SAFETY**

In the event that the dwelling unit is damaged to the extent that conditions are created which are hazardous to the life, health or safety of the occupants:

a) Tenant must immediately notify the Property Manager of the damage;

b) LMHA will be responsible for repair of the unit within a reasonable time, provided that if the damage was caused by Tenant, household members or guests, the reasonable cost of the repairs will be charged to Tenant;

\*\*\*

**Section 20. UNDERSTANDING AND CERTIFICATION**

The parties agree that each has read this Lease; that the parties fully understand all terms and provisions of the Lease; that the terms and provisions represent and constitute the entire understanding and agreement of the parties; and that the parties voluntarily sign this lease. LMHA will retain a signed copy of this lease in Tenant's file. Each signatory is jointly and severally responsible for the timely payment of rent and the fulfillment of all other provisions of this lease.

\*\*\*

(Doc. 32-1, at 8, 12, 13). The House Rules document provided, *inter alia*,

1) **LMHA'S RESPONSIBILITIES:**

3

> A) These Rules will be applied fairly and uniformly to all tenants.
>
> B) LMHA and representatives/designees of the Department of Housing and Urban Development ("HUD") will inspect each unit at least annually to determine compliance with Uniform Physical Conditions Standards ("UCPS"). Upon completion of an inspection, LMHA will tell the tenant the specific correction(s) required for compliance and, if the first inspection finds areas of non-compliance, that training is available if needed for compliance. LMHA will schedule a second inspection within a reasonable period of time. Failure of a second inspection constitutes a serious violation of the Lease. LMHA has the right to inspect as many times as it deems necessary, with appropriate notice to the tenant.
>
> 2) **TENANT'S RESPONSIBILITIES**
>
> A) **The tenant is required to abide by these Rules. Failure to abide by the Rules may result in termination of the lease.**

(Doc. 32-1, at 15) (emphasis in original)

Two "entries" into Plaintiff's home form the basis for her complaint in this case.

First, on August 28, 2014, Plaintiff filed a police report stating there had been an attempted burglary at her home whereby a screen had been cut. (Doc. 32-1, at 19). She reported this took place sometime between 9:00 P.M. on August 26 and 9:00 A.M. on August 27. *Id.* Morgan avers that on or about August 28, Plaintiff notified the management office of the incident and that "a screen covering the front window" had been cut. (Doc. 32-1, at 2). On August 28, a maintenance employee repaired the screen when Plaintiff was not home, and left a notice of repair inside Plaintiff's home. *Id.* Plaintiff found such a notification on her table when she returned. (Doc. 29, at 2).[2] According to Plaintiff, the screen was installed outside the threshold of her home. *Id.*

---

2. The Sixth Circuit has held that "a verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment, *El Bey v. Roop,* 530 F.3d 407, 414 (6th Cir. 2008), to the extent that it is based on personal knowledge, *Hooks v. Hooks*, 771 F.2d 935 (6th

Plaintiff avers in her amended complaint that she "requested multiple times to Carrie Morgan verbally and in writing that she did not feel comfortable with anyone from the defendant[']s staff to enter her home unless she was there to witness the services rendered." *Id.*

Second, on September 16, 2014, Morgan sent a letter to tenants, including Plaintiff, notifying them that the "UPCS and Housekeeping Inspection" required by the lease and federal HUD regulations was to be performed during the week of September 29, 2014. (Doc. 32-1, at 21). 24 C.F.R. § 5.705. The letter explained that "[d]ue to the large volume of inspections that will be performed, *we unfortunately cannot specify what day or time your unit will be inspected.* If you are not at home we will enter your unit. (Doc. 32-1, at 21) (emphasis in original). On September 30, 2014, Morgan accompanied by two LMHA employees, and one LMHA independent contractor, attempted to access Plaintiff's home for this inspection. Morgan avers that Plaintiff stated she was not dressed, and refused to allow Morgan entry. Morgan told Plaintiff she would go to other units and return.[3] Upon her return, Plaintiff continued to refuse to allow entry to conduct an inspection. A maintenance employee pried open one of the screen doors, and Morgan discovered Plaintiff had installed additional locks. Morgan did not enter Plaintiff's home.

On this basis, Morgan served Plaintiff with a 30 day notice of termination of her lease. Morgan states Plaintiff called her names and threatened her at a private conference held on

---

Cir. 1985)." *Mourad v. Homeward Residential, Inc.,* 517 F. App'x 360, 366 (6th Cir. 2013). *See also Miller v. Jones,* 483 F. App'x 202, 203 (6th Cir. 2012) (citations omitted) ("[C]ourts should consider the allegations in a *pro se* prisoner's verified complaints (which are effectively affidavits) before entering judgment against him, even if the prisoner fails to cite that evidence in response to a motion for summary judgment."). Plaintiff's original complaint (Doc. 1) is not verified, however, her amended complaint (Doc. 29) is verified.

3. In her original complaint (which is not sworn or verified) Plaintiff states she was "committed to domestic chores and asked (pleaded[)] with [Morgan] to reschedule the inspection. Or at least come back after inspecting someone else because the plaintiff was naked." (Doc. 1, at 3).

5

October 7, 2014, to discuss the termination notice. Another LMHA employee called police and Plaintiff left.[4]

Finally, Morgan states that Plaintiff "was evicted from Ravine in November, 2014 by order of the Toledo Municipal Court." (Doc. 32-1, at 3).

### STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*.

### DISCUSSION

Defendants argue they are entitled to summary judgment on Plaintiff's § 1983 claim for four reasons: 1) Plaintiff cannot establish a Fourth Amendment violation; 2) Plaintiff cannot identify an official policy of LMHA that violates her Fourth Amendment rights; 3) LMHA has no liability for the acts of Morgan under respondeat superior; and 4) Morgan is entitled to

---

4. Morgan filed a police report on October 16, 2014 reporting the October 7, 2014, incident, as well as a hostile encounter between the Plaintiff and her on October 15, 2014. (Doc. 32-1, at 23-24).

qualified immunity. Plaintiff asserts there are genuine issues of material fact precluding summary judgment and attaches the six exhibits discussed below. Defendant responds that Plaintiff has offered no admissible evidence or legal argument to show a genuine issue of material fact, and relies upon unauthenticated exhibits. In her sur-reply, Plaintiff argues Defendants have "both readily admitted to illegal entry and searches" and also attaches what appear to be Defendants' responses to interrogatories, as well as Defendants' answer to Plaintiff's original complaint. (Doc. 38, at 5-8).

The Court pauses at the outset to note evidentiary standards for a Rule 56 summary judgment motion. Rule 56 requires parties to support their factual assertions with admissible evidence. Fed. R. Civ. P. 56(c), (e); *Viergutz v. Lucent Techs., Inc.,* 375 F. App'x 482, 485 (6th Cir. 2010). It is well-settled that a *pro se* plaintiff is held to less stringent pleading standard than a trained lawyer, and therefore, this Court is required to construe plaintiff's *pro se* complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Notwithstanding the liberal treatment of *pro se* pleadings, a *pro se* plaintiff still bears the burden of setting forth specific facts demonstrating a genuine issue of material fact where the opposing party has moved for summary judgment. *Black v. Parke*, 4 F.3d 442, 448 (6th Cir. 1993); *see also Ashiegbu v. Purviance*, 74 F. Supp. 2d 740, 746 (S.D. Ohio 1998) (liberal pleading standard "does not mean, however, that *pro se* plaintiffs are entitled to take every case to trial").

In *Viergutz,* the Sixth Circuit noted that, when opposing summary judgment, a party must support their opposition with admissible evidence, rather than relying on allegations or denials in unsworn filings. 375 F. App'x at 485. The court explicitly held that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Id.* (dismissing *pro se* claims for lack of admissible supporting evidence); *see also Zainalian v. Memphis Bd. of Educ.,* 3 F.

7

App'x 429, 431 (6th Cir. 2001) (affirming the lower court's decision to disregard the *pro se* plaintiff's unsworn affidavit and to grant summary judgment against him; "[a]s [the plaintiff] neither verified his affidavit nor complaint, signed them under oath, nor signed them under penalty of perjury . . . , the facts averred to therein lacked the force and effect of an affidavit for purposes of responding to a motion for summary judgment"); *United States v. Brown,* 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"; although the plaintiff had made relevant factual allegations, he "did not file an affidavit to this effect nor did he sign any pleading under penalty of perjury").

Preliminarily, the Court notes the evidence presented in support of and opposition to the instant motion. In support of their summary judgment motion, Defendants submit a sworn affidavit from Morgan with six attached exhibits. (Doc. 32-1, at 1-4, 5-24). These exhibits include the lease, *id.* at 5-14; the House Rules, *id.* at 15-18;the August 26, 2014 police report, *id.* at 19-20; a letter regarding the annual inspection, *id.* at 21; the October 7, 2014 private conference summary, *id.* at 22; and the October 16, 2014 police report, *id.* at 23-24.

Plaintiff's opposition contains unsworn statements such as that "the so called inspections were being done at the whim of Def Carrie Morgan and when conducted did not 'inspect' anything." (Doc. 36, at 2). Such statements, unsupported by admissible evidence, cannot be considered. Plaintiff also attaches six exhibits to her opposition: 1) a document regarding HUD housing rights (Doc. 36-1, at 2); 2) a Toledo Municipal Court summons dated November 7, 2014, *id.* at 3; 3) a private conference summary from a meeting between Plaintiff and Morgan[5], *id.* at 4); 4) a counseling note, *id.* at 5; 5) a copy of an LMHA maintenance note, with

---

5. This is a duplicate of an exhibit attached to Defendant's motion and authenticated by Morgan's affidavit. (Doc. 32-1, at 22).

8

handwritten comments, *id.* at 6; and 6) a document about housing rights for domestic violence, sexual assault, and stalking survivors, *id.* at 7. (Doc. 36-1, at 2-7). Plaintiff also attaches to her sur-reply what appear to be Defendants' responses to interrogatories (Doc. 38, at 5-6), and Defendants Answer in this case (Doc. 38, at 7-8). Additionally, Plaintiff attached many of these same exhibits to her amended complaint, and in addition, a note from her child's daycare (Doc. 29, at 5), and a consent for treatment document for herself, *id.* at 7.

Exhibits must be authenticated to be admissible. *See* Fed. R. Evid. 901. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Id.* Defendants' exhibits are authenticated by Morgan's affidavit. The Toledo Municipal Court summons is admissible because court documents are generally considered self-authenticating. *See* Fed. R. Evid. 902(1). The LMHA maintenance note is also admissible based on Plaintiff's statement in her verified complaint that she found the note on her table after it was repaired. (Doc. 29, at 2). The handwritten comments thereon, however, are not admissible as they are not authenticated. The evaluations for counseling and the day care note are arguably admissible as Plaintiff refers to them in her verified complaint.

The Court does also, as noted above, consider the statements from Plaintiff's amended complaint, to the extent they are based on personal knowledge, because it was sworn and notarized. *See El Bey,* 530 F.3d at 414 (verified complaint has the same weight as an affidavit).

In her complaint, Plaintiff alleges violations of the Civil Rights Act, 42 U.S.C § 1983. To prove a § 1983 cause of action, a civil rights plaintiff must prove that the defendant acted under color of law and deprived the plaintiff of rights secured by federal law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Section 1983 alone creates no substantive rights; rather it is the means

9

through which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979). The statute applies only if there is a deprivation of a constitutional right. *See e.g., Paul v. Davis,* 424 U.S. 693, 699-701(1976); *Baker,* 443 U.S. at 146-47. Thus, "[t]he first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States. *Baker,* 443 U.S. at 140. In their summary judgment motion, Defendants argue Plaintiff cannot overcome this first hurdle because Plaintiff does not submit admissible evidence in support of her assertion Defendants violated her Fourth Amendment rights in their entries into her home. For the reasons discussed below, the undersigned agrees.

*Constitutional Violation*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV. Fundamental to the Fourth Amendment's protection from unreasonable search and seizure is the principle "that searches and seizures inside a home without a warrant are presumptively unreasonable." *Welsh v. Wisconsin,* 466 U.S. 740, 748-49 (1984). However, a well-established exception to this principle is consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

*August 28, 2014*

Plaintiff has produced no admissible evidence to show that the first entry into her home— on August 28, 2014—was without her consent or otherwise unreasonable. It is undisputed that Plaintiff signed a lease which stated: "Tenant agrees that any person authorized by LMHA will be permitted to enter the premises during working hours . . . for the purpose of . . . making improvements or repairs. . . . If Tenant is absent from the dwelling unit when LMHA arrives to perform maintenance requested by Tenant, the request for maintenance constitutes Tenant's

10

authority to enter the unit." (Doc. 32-1, at 12). Morgan states in her affidavit that "[o]n or about August 28, 2014 [Plaintiff] notified the Management Office at Ravine that an attempt had been made to break into her housing unit. As a result a screen covering the front window was cut." (Doc. 32-1, at 2). Pursuant to the lease, therefore, Morgan had given her consent for this entry.

Although Plaintiff stated in her amended complaint that she "requested multiple times to Carrie Morgan verbally and in writing that she did not feel comfortable with anyone from the defendants staff to enter her home unless she was there to witness the services rendered" (Doc. 29, at 2), Plaintiff does not dispute that she signed the lease, nor does she dispute that she notified management of the need for repair. Plaintiff points to an unauthenticated document (Doc. 36-1, at 2) to support her assertion that "the lease states that [defendants] cannot enter without permission" (Doc. 36, at 2). Even if the undersigned could consider this document, it is not the signed lease, which as discussed above, stated consent could be presumed from request to repair. The lease also stated that its "terms and provisions represent[ed] and constitute[d] the entire understanding and agreement of the parties." (Doc. 32-1, at 13).

Plaintiff argues that it was unnecessary for an LMHA employee to enter her apartment to repair an *exterior* screen. However, the lease also states that "If Tenant and all adult members of the household are absent at the time of entry, LMHA will leave a written statement specifying the date, time and purpose of entry in a conspicuous place before leaving the unit." *Id.* Morgan avers that an LMHA employee replaced the screen, and because Plaintiff was not present, "the maintenance employee left a notice of repair for [Plaintiff] inside her unit." (Doc. 32-1, at 2).[6] The note has a check mark next to "service was performed" and states "[r]eplaced

---

6 In her opposition, Plaintiff attaches a copy of this notice with a handwritten note that the note was left in her home. (Doc. 36-1, at 6).

11

screen in living room window." This is what the lease permitted. Nor does Plaintiff produce any evidence that the entry to repair a screen and leave Plaintiff notice of that repair was in any way conducted in an unreasonable manner.

*September 30, 2014*

As to the September 30, 2014 encounter, Plaintiff has produced no evidence to show there was any entry into her home. Rather, Plaintiff contends that Morgan had no right to even attempt to enter. Even assuming there was an entry here, Plaintiff had given consent in the lease, and such an entry to conduct an inspection would not be unreasonable. It is undisputed that Plaintiff signed a lease and house rules in which she consented to entry for purposes of routine inspections (Doc. 32-1, at 8, 15), including an "at least annual[]" HUD inspection *Id.* at 15. Defendants provided notice of this inspection as required. (Doc. 32-1, at 21). By signing the lease, Plaintiff gave consent to entry for purposes of this inspection. Plaintiff does not assert she did not sign the lease, nor that she did not receive the notice Defendants provided. Rather, Plaintiff responds with unsworn allegations that "so called inspections were being done at the whim of . . . Morgan and when conducted did not 'inspect' anything. Notwithstanding instead of bi-Yearly the inspections were monthly at random" (Doc. 36, at 2), and that "plaintiff only started refusing inspections when it became apparent they were being used as a harassment tactic" (Doc. 36, at 3). As noted above, such allegations, unsupported by admissible evidence, cannot be considered.

Other courts have found that inspections of rental units in compliance with a signed lease and HUD regulations are not Fourth Amendment violations. *See Echemendia v. Gene B. Glick Mgmt. Corp.*, 263 F. App'x 479, 482-83 (7th Cir. 2008) ("[T]he evidence shows that they entered only because HUD regulations required an annual inspection, and she had agreed to this

12

in her lease and her application for HUD funds. Their entry would have been a consensual encounter, which would not violate the Fourth Amendment.") (internal citation omitted); *Kendall v. Oxford Hous. Auth.*, 1994 WL 1890896, at *2 (N.D. Miss) (rejecting Fourth Amendment claim and stating: "In making this agreement [in which lease provided for entry for inspection and making repairs] and accepting public housing, plaintiff waived any objections she may have had to the home inspections, and as the 'choice [was] entirely hers,', regarding acceptance of these terms, 'nothing of constitutional magnitude is involved.'") (quoting *Wyman v. James,* 400 U.S. 309, 324 (1971)).

Similarly here, Plaintiff signed a lease in which she consented to such inspections. That is not to say that such inspections could never be conducted in a manner violative of the Fourth Amendment, but based on the evidence presented, that is not the case here as no inspection occurred. Section 1983 provides an avenue for relief for actual deprivation of federally protected rights. *See Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 120 (1992) ("Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution") (citing 42 U.S.C. § 1983) *Cf. Cnty of Sacramento v. Lewis*, 523 U.S. 833, 845 n.7 (1998) (attempted seizures of persons are beyond the scope of the Fourth Amendment); *United States v. Valentine,* 232 F.3d 350, 358 (3d Cir. 2000) ("[I]f the police make a show of authority and the suspect does not submit, there is no seizure."); *see also Andree v. Ashland Cnty.,* 818 F.2d 1306, 1311 (7th Cir.1987) ("[T]he mere *attempt* to deprive a person of his [constitutional] rights is not, under usual circumstances, actionable under section 1983") (emphasis in the original); *Sweetman v. Borough of Norristown, PA*, 554 F. App'x 86, 89-90 (3d Cir. 2014) (holding that because plaintiff "did not submit to the inspection of his home" he was "thus not deprived of his Fourth Amendment right to be free of unreasonable searches").

Therefore, even if Plaintiff could and had withdrawn her consent at this point, Defendants did not gain access to her home for the inspection, and thus she could not have been deprived of her Fourth Amendment right to be free of unreasonable searches. *See Sweetman*, 554 F. App'x at 8-90; *cf. Lewis*, 523 U.S. at 845 n.7.

In opposition, Plaintiff also argues that "[t]he defendant forcibly entered the plaintiff's dwelling before the court granted the order. See exhibit (A)(2)." (Doc. 36, at 3). The exhibit Plaintiff cites is a copy of a Summons from the Toledo Municipal Court informing Plaintiff that a complaint to evict her has been filed, and an appearance date of November 7, 2014 has been set. (Doc. 36-1, at 3). This notice does not relate to either of the above-discussed entries for repair or inspection, however, but rather to Plaintiff's eventual eviction.[7]

The Court therefore finds there is no genuine issue of material fact as to whether Plaintiff's Fourth Amendment rights were violated by either the August 28, 2014, entry or September 30, 2014, attempted inspection. Because proof of a constitutional violation is a necessary part of a § 1983 claim and Plaintiff has failed to provide such proof, summary judgment for Defendants is appropriate.

---

7. In her sur-reply, Plaintiff refers to "three separate occasion's [sic]" on which the Defendants entered her apartment. (Doc. 38, at 1). To the extent she challenges the eviction as a Fourth Amendment violation, she has produced no evidence to support such a claim.

## CONCLUSION

Upon review of the evidence and arguments, the Court finds there are no genuine issues of material fact and Defendants are entitled to summary judgment as a matter of law. Defendants' Motion for Summary Judgment (Doc. 32) is granted and the case is dismissed with prejudice.

IT IS SO ORDERED.

                                               s/James R. Knepp II
                                               United States Magistrate Judge